# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:25-cr-31 (02) |
| Plaintiff, | : | |
| v. | : | |
| RYAN WADE JOHNSTON, | : | |
| Defendant. | : | |

## MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT

Defendant Ryan Wade Johnston, by and through counsel, respectfully requests this Court suppress any and all evidence obtained, directly from and derivative of a search warrant executed on Samsung Phone in Black and Clear Case, a cell phone used by Mr. Johnston. The grounds for this Motion are set forth in the accompanying Memorandum in Support.

Respectfully submitted,

*/s/ Stephanie F. Kessler*
STEPHANIE F. KESSLER (0092338)
Kessler Defense LLC
500 East Main St, 1600
Norfolk, VA 23510
(513) 316-5807
stephanie@kesslerdefense.com

*Attorney for Ryan Johnston*

1

# MEMORANDUM IN SUPPORT

## I. FACTS

On January 31, 2025, the Government secured the search warrant at issue in this motion. (Def. Ex A, to be filed separately under seal). The Government sought evidence, contraband, fruits of, or property deigned for the use of receipt and distribution of child pornography, possession of child pornography, production of child pornography, and coercion and enticement. (*Id.* at USAO-000199). Eight devices were listed in the items to be searched. (*Id.* at USAO-00198). Seven of the items belonged to Mr. Buenaga, Mr. Johnston's co-defendant. The "Samsung Phone in Black and Clear Case" was used by Johnston and was seized from him during his arrest. (*Id.* at USAO-000221).

On January 22, 2025, law enforcement received a tip about the production of child pornography. (*Id.* at ¶ 17). The following day, an undercover FBI employee ("UCE") engaged in online conversation with the person referenced in the online tip. (*Id.* at ¶ 18).

The investigation led to the identification of Mr. Johnston's co-defendant, Alex Buenaga. (*Id.* at ¶¶ 17-23). It also led to the identification of Minor Victim One as a baby between six and eight months old. (*Id.* at ¶ 19). Law enforcement believed Buenaga had produced and distributed child sexual abuse material ("CSAM") using Minor Victim One. (*Id.* at ¶ 19).

Then, on January 24, 2025, Buenaga shared with the UCE that another man was coming over to "share" Minor Victim One. (*Id.* at ¶ 24). Law enforcement went to Buenaga's home to intercede.

There, they encountered Ryan Johnston outside. (*Id.* at ¶ 25). Johnston consented to an interview with law enforcement during which he showed the agents messages between himself

and Buenaga. (*Id.* at ¶ 27). Screen shots of those messages were included in the affidavit for the search warrant that authorized the search of Johnston's phone.

The screen shots do not evidence any exchanges of CSAM. The screen shots do not set forth any facts that could show Johnston possessed, received, distributed, or produced CSAM.

Johnston's messages to Buenaga that arguably relate to the crime of enticement and coercion are:

- "No no no me only" (USAO-000210);
- "I'm otwthere now bro don't back out." (USAO-000210);
- "…can I stroke my cock while u touch her. Or maybe I'm really wanting to such ur cock for some reason I'm usually not that horny for it but I want to" (USAO-000213);
- "Let's watch u then see how we feel I will absolutely love 2 but we will go with how we feel." (USAO-000213);
- "Maybe kiss her. A little taste would make my cock explode." (USAO-000213).

Separately, the affidavit includes inappropriate text messages regarding minors Johnston had access to. (*Id.* at USAO-000211, 00214).[1]

## II. LAW

### A. Fourth Amendment, generally

> "The Fourth Amendment of the United States Constitution provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"

---

[1] Johnston is not charged for any crimes in relation to the three children he had access to. The children were forensically interviewed and did not make any disclosures of abuse.

*United States v. Lipscomb*, 386 F. Supp. 3d 680, 684 (E.D. Va. 2019) (quoting U.S. Const. amend. IV). Upon motion and proof, defendants have the right to have excluded from trial any evidence secured by means of an unlawful search and seizure. *Id.* (citations omitted). Generally, law enforcement is required to obtain a search warrant when no exception to the warrant requirement applies. *Id.* (citing *Riley v. California*, 573 U.S. 373, 382 (2014)).

An application for a valid search warrant must set forth facts sworn by oath or affirmation that support a finding of probable cause by a neutral, detached magistrate. *Id.* (citations omitted). The probable cause must establish a fair probability that contraband or evidence of a crime will be found in the place(s) to be searched. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A consideration of whether the search warrant application contains sufficient probable cause is limited to the facts "set forth in the four corners of the officer's sworn affidavit." *Id.*

Evidence obtained as the result of an invalid search warrant is not subject to exclusion from trial if the "good faith" exception applies. *Id.* at 685. "The 'good faith' exception to the warrant requirement provides that evidence need not be suppressed when the police obtain such evidence through a good faith reliance on a facially valid warrant, even if such warrant is later found to lack probable cause." *Id.* (citation omitted). "If evidence was obtained pursuant to a facially valid warrant, suppression is only appropriate if the officer executing the warrant has 'no reasonable grounds for believing that the warrant was properly issued.'" *Id.* (citation omitted).

> There are four (4) specific situations where the executing officers have "no reasonable grounds for believing that the warrant was properly issued," and where evidence must therefore be suppressed, even though it was obtained pursuant to a search warrant: (1) the warrant application contains false or misleading information; (2) the magistrate "wholly abandoned his judicial role" by failing to act as a neutral decisionmaker; (3) the warrant application is "so lacking in indicia of probable cause" that the executing officers cannot reasonably believe there is probable cause for the search; (4) the

4

> search warrant is so vague—by failing to state with particularity the place to be searched or the things to be seized—that the executing officers cannot reasonably believe it is a valid warrant.

*Id.* (citations omitted).

### B. Standing

Defense counsel has received credible information that, although Johnston used the Samsung Phone in Black and Clear Case, an uninvolved third-party is the legal owner, paid for the phone itself, and paid the monthly service plan for the phone. The documentary support for this information has not yet been presented to defense counsel. Anticipating the information will be corroborated by the supporting documentation, Johnston will go ahead and address the issue of standing.

A defendant bears the burden of demonstrating a legitimate expectation of privacy with respect to the location or item to be searched. *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013).

> In order to demonstrate a legitimate expectation of privacy, [Castellanos] must have a subjective expectation of privacy, and that subjective expectation of privacy must be "objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable.

*Id.* (cleaned up, quotations omitted).

The Fifth Circuit rejected the government's contention that a defendant lacked standing to challenge the search of a cell phone that was issued to the defendant by his employer in *United States v. Finley*, 477 F.3d 250, 258 (5th Cir. 2007). In the case, "The district court found that, although Finley's employer issued him the cell phone, Finley nonetheless maintained a property interest in the phone, had a right to exclude others from using the phone, exhibited a subjective expectation of privacy in the phone, and took normal precautions to maintain his privacy in the

phone." *United States v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007). The Fifth Circuit pointed out that that a property interest in the item to be searched is only one factor in the analysis and that it was not a dispositive factor. *Id.* In response to the Government's argument that Findley lacked a privacy interest because his employer could have read the contents of the phone, the Fifth Circuit reasoned that that Findley could still have a reasonable expectation of privacy as to invasion from the government and the general public. *Id.* The Fifth Circuit held that the defendant had a reasonable expectation of privacy to the phone and had standing to challenge the search of it. *Id.*

Reasonably, a district court in New York suggested that issues of whether a defendant who used a phone subscribed to another has standing are analogous to,

> situations involving storage lockers, hotel rooms, and mail packages. Such cases clearly establish that '[o]ne need not be the owner of the property for his privacy interest to be one that the Fourth Amendment protects, so long as he has the right to exclude others from dealing with the property.'

*United States v. Herron*, 2 F. Supp. 3d 391, 400 (E.D.N.Y. 2014), *aff'd*, 762 F. App'x 25 (2d Cir. 2019) (quoting *United States v. Perea,* 986 F.2d 633, 639–40 (2d Cir.1993)). In support of its conclusion that the defendant had a legitimate expectation of privacy in the targeted cell phone, the district court relied on the fact that there was no dispute that the cell phone was used by the defendant, that the defendant had been arrested with the phone in his possession, and the defendant had acknowledged that it was his. *Id.*

### C. Probable cause as it relates to child pornography related crimes

There are no facts in the affidavit regarding Johnston receiving, distributing, possessing, or producing child pornography. The facts in the affidavit that arguably could have supported probable cause for child molestation are not sufficient to secure a search warrant for receipt, distribution, production, or possession of child pornography.

In 2011, the Fourth Circuit articulated, "[…] evidence of child molestation alone does not support probable cause to search for child pornography." *United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011). In *Doyle*, three minor children had reported being sexually assaulted by Doyle at his residence. *Id.* at 464. One of the minors disclosed that Doyle had shown the child pictures of nude children. *Id.* Law enforcement sought and secured a search warrant for Doyle's home which included a computer. *Id.* at 463. The warrant application requested a search for evidence of possession of child pornography. *Id.* at 464. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Doyle* at 471 (quoting *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978)). In *Doyle*, the Fourth Circuit noted the only mention in the warrant application regarding the presence of pornography was the statement that one of the alleged victims 'disclosed to an Uncle that Doyle had shown the victim pictures of nude children.'" *Id*. Claims of pictures of nude children were insufficient. "The mere presence of nudity in a photograph, even child nudity, does not constitute child pornography as that term is defined by Virginia law." *Id.* at 473.

In *Doyle*, the Court found that the good-faith exception did not apply. The Fourth Circuit rejected the argument that a reasonable law enforcement officer would not know the legal distinction between mere nudity and child pornography. *Id.* "[P]olice officers generally have a duty to know the basic elements of the laws they enforce." *Id.* (quoting *Kelly v. Borough of Carlisle,* 622 F.3d 248, 258 (3d Cir. 2010)). "We conclude that the objectively reasonable officer would not rely on a warrant application so devoid of necessary information. Moreover, because reliance on the warrant was not objectively reasonable, we find that the good faith exception recognized in *Leon* is inapplicable." *Id.* at 476.

Similarly, in *United States v. Church*, a judge in this district explained,

> Notwithstanding the deference that is owed to the magistrate's determination, some logical inferences, without more, cannot support a finding of probable cause as a matter of law. See, e.g., Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (rejecting the inference that probable cause to search a person could be based on the individual's "mere propinquity" to another person or location suspected of criminal activity). In United States v. Doyle, 650 F.3d 460 (4th Cir. 2011), the Fourth Circuit determined that one such impermissible inference involved the link between child pornography and child molestation. Reviewing a warrant based on the link between the two crimes, the Doyle Court was unequivocal in its conclusion that "evidence of child molestation alone does not support probable cause to search for child pornography." Id. at 472.

*United States v. Church*, No. 3:16CR92, 2016 WL 6123235, at *3 (E.D. Va. Oct. 18, 2016). In the *Church* case, a minor female reported that the defendant has sexually assaulted her at his home. *Id.* at *1. The minor described exchanging text messages with the defendant but denied that he had sent or showed her pornographic images or videos. *Id.*

The probable cause related to the forcible sodomy was not sufficient to establish probable cause for possession of child pornography. While the district court recognized that probable cause had been established to search for evidence of forcible sodomy within Church's cell phone, the affidavit "provided no ground to believe that evidence of either Forcible Sodomy or Child Pornography would be found on Church's tablet, laptop computer, or other electronic devices." *Id.* at *5. Notably, at the time of the execution of the warrant, "no evidence had been discovered connecting him to the use or possession of child pornography." *Id.*

Additionally, as was the case in *Doyle*, the district court in *Church* found the good-faith exception did not apply.

> For many of the reasons previously outlined above, the good-faith exception to the warrant requirement cannot apply in this case. The warrant to search the Church residence was issued without any

8

> tangible evidence connecting Church to the crime of child pornography, in direct contradiction to binding Fourth Circuit precedent. Under such circumstances, "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002). Therefore the good-faith exception does not apply.

*Id.* at *6.

### D. Probable cause as it relates to enticement and coercion charge

As noted by the Fourth Circuit in *Doyle*, "[p]olice officers generally have a duty to know the basic elements of the laws they enforce." *Doyle*, 650 F.3d at 473. (quoting *Kelly v. Borough of Carlisle,* 622 F.3d 248, 258 (3d Cir.2010)). 18 U.S.C. § 2422(b), coercion and enticement, has four elements,

> (1) use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) a person who is younger than eighteen; (4) to engage in an illegal sexual activity.

*United States v. Fugit*, 703 F.3d 248, 254 (4th Cir. 2012) (quoting *United States v. Kaye,* 451 F.Supp.2d 775, 782 (E.D.Va.2006)).

> Although the terms "persuade," "induce," and "entice" are not statutorily defined, we have found that they are words of common usage" and have accord[ed] them their ordinary meaning. Moreover, these terms are effectively synonymous, conveying the idea of one person leading or moving another by persuasion or influence, as to some action [or] state of mind. Our interpretation of these terms accords with the statute's intent to criminalize[ ] an intentional attempt to achieve a mental state—a minor's assent.

*United States v. Clarke*, 842 F.3d 288, 296 (4th Cir. 2016) (cleaned up).

It is not necessary for a defendant to have direct contact with a person who is a minor in order for the elements to be satisfied. The issue of whether a defendant has to have communication directly with the minor was squarely presented to the Fourth Circuit in *United States v. Clarke*,

842 F.3d 288, 297 (4th Cir. 2016). The *Clarke* court held, "'communications with an intermediary aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within [the] common understanding of a criminal attempt that is prohibited by [Section] 2422(b).'" *Id.* at 297-98 (quoting *United States v. Roman*, 795 F.3d 511, 517 (6th Cir. 2015)).

While a defendant need not communicate with the minor, whether the persuasive communication needs to be aimed at the minor but done through an intermediary or whether it is sufficient that the persuasive communication needs to be aimed at the intermediary is an unresolved issue. There appears to be a circuit split on what interplay is necessary between the defendant, the intermediary, and the minor.

According to the District of Columbia Court of Appeals, the defendant's interaction with the intermediary must be "aimed at transforming or overcoming the minor's will in favor of engaging in illegal sexual activity." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014). In so finding, the court recognized, "The purpose of § 2422(b) was to protect minors from sexual exploitation by online predators." *Id.* at 1163. In response to the government's argument that "§ 2422(b) does not require the defendant to attempt to transform or overcome the minor's will," the court explained, "[w]hile the statute does not preclude the use of an intermediary, it clearly establishes the 'individual who has not attained the age of 18 years,' § 2422(b), as the intended object of the *actus reus* verbs." *Id.* at 1164 (D.C. Cir. 2014). In *Hite*, the defendant, with respect to a three year old, communicated to the intermediary that "a more gradual way to proceed" was appropriate. *Id.* at 1158. The defendant suggested "taking a shower together or wrestling in their underwear." *Id.* Additionally, the defendant suggested using jelly or honey to keep the child enticed. *Id.*

In contrast, the Fifth Circuit "requires only that defendant take actions directed toward obtaining the child's assent through an intermediary." *United States v. Montgomery*, 746 F. App'x 381, 385 (5th Cir. 2018) (quotation omitted). It is sufficient for the defendant to persuade, induce, entice, or coerce a minor to engage in sexual activity by relying on a parent's influence or control over the child." *Id.*

Under either interpretation, the defendant must make efforts that constitute knowingly persuading, inducing, enticing, or coercing. As recognized in the Fourth Circuit, the statute was drafted to criminalize the "persuasion" rather than the sexual act itself. In enacting Section 2422(b), Congress intended "to criminalize persuasion and the attempt to persuade, not [just] the performance of the sexual acts themselves." *Clarke*, 842 F.3d at 297.

In *United States v. Nitschke*, a district court in D.C. granted a defendant's motion to dismiss a § 2422(b) charge after finding that the Defendant's communications with an intermediary "do not, as a matter of law, display an intend to persuade…" In so finding, the court recognized, "[a]s an initial matter, the parties agree that the intent criminalized by § 2422(b) is the intent to persuade, induce, entice, or coerce a minor, not the intent to have sex with a minor." *United States v. Nitschke*, 843 F. Supp. 2d 4, 11 (D.D.C. 2011).

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves. Hence a conviction under the statute only requires a finding that the defendant had an intent to persuade or to attempt to persuade.

*Id.* (quoting *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000)). As applied to the facts of the case,

> Given the undisputed facts here, no reasonable juror could find that Defendant intended to cause the minor to assent. For example, Nitschke never sought Detective Palchak's help in procuring the fictitious minor. He did not ask Palchak to pass along any communication whatsoever to the minor. He did not make any promises to the minor through Palchak. He did not offer any money or anything else of value, and he did not invite Palchak or the minor anywhere.

*Id.* at 13. "Ultimately, Palchak asked Defendant if he wanted to join the threesome. Nitschke never himself asked to join; he simply accepted an offer. None of the chats demonstrates anything more than an acceptance to participate in Palchak's pre-existing plan to have sex with the fictitious minor." *Id.*

The facts in *Montgomery*, finding a defendant's communications with the intermediary to be sufficient, are quite different than those set forth in *Nitschke*. In *Montgomery*,

> Montgomery sought confirmation that the Agent's daughter would be interested in having sex with him, and asked the Agent to explain why she thought her daughter would be interested in him. Further, Montgomery's communications with the Agent evinced an intent to persuade, induce, entice, or coerce her child into sexual activity by stating that, for the first encounter, they would need to give the child "sleepy medicine so she will tape [sic] a nap while we play w [sic] her", and by relying on the Agent's influence over her child. Montgomery asked what the Agent wanted to have happen to her "little babe"; described his "ideal night" with the daughter at the Agent's request and stated he would not "force the situation"; offered to give the child a trophy he won; asked the Agent what she had told her daughter about him; and stated he would hate to disappoint the child. In short, a rational jury could have found the evidence sufficient to show Montgomery possessed the requisite intent to violate § 2422(b). *See Pratt*, 807 F.3d at 645; *Imo*, 739 F.3d at 235; *Lewis*, 774 F.3d at 841.

*Montgomery*, 746 F. App'x at 386.

## III. ARGUMENT

### A. Johnston has standing.

Here, Johnston has an objectively reasonable subjective expectation of privacy. The fact that a third-party has a property interest in the phone and may have been able to access its content in some circumstances does not mean that Johnston lacks standing. As was the case in *Findlay*, Johnston had a property interest in the phone. He had the right and the ability to exclude others from using it. As was the case in *Herron*, Johnston used the phone to send messages, was arrested with the targeted phone in his possession, and treated it as his. Accordingly, Johnston has standing to challenge the search of the Samsung Phone in Black and Clear Case.

### B. There was no probable cause to search Johnston's phone in relation to child pornography related charges and the good-faith exception does not apply.

Even if we assume there was probable cause of molestation in the matter at hand, as was the case in *Doyle* and *Church*, that probable cause does not establish probable cause to search for child pornography related crimes. Moreover, inappropriate conversations about minors is insufficient. In *Church*, the defendant had inappropriate texts *with* a minor. Here, Johnston had inappropriate texts *about* minors. It's a distinction without a difference. There is still no probable cause that evidence related to child pornography related crimes would be found in the Samsung Phone in Black and Clear Case.

Moreover, the good-faith exception to exclusion as it related to the child pornography crimes does not apply. Similar to the facts in *Church*, the warrant to search Johnston's phone was issued without any tangible evidence connecting Johnston to a crime of child pornography, in direct contradiction to binding Fourth Circuit precedent. *Church* at *6. A well trained officer would

have known the search for evidence of child pornography claims was illegal despite the magistrate's authorization. The good faith exception does not apply.

**C. There was no probable cause to search Johnston's phone in relation to the enticement and coercion charge and the good-faith exception does not apply.**

First, due to the age of Minor Victim 1, Johnston cannot, as a matter of law, be convicted of enticement and coercion. As articulated by the Fourth Circuit in 2016, the statute's intent is to achieve a mental state from the minor, the minor's assent. *Clarke*, 842 F.3d at 296. A 6-8 month old cannot achieve a mental state of assent. A child that young cannot be persuaded, induced, enticed, or coerced to engage in sexual conduct by anyone. The statute was intended to criminalize the efforts at persuasion rather than the underlying sexual act itself (which are covered under other federal and state laws).

Alternatively, Johnston's communications with Buenaga, as set forth in the affidavit, clearly do not meet the element of knowingly persuading, inducing, enticing, or coercing or attempting to do. It is undisputed that Johnston had no contact with Minor Victim 1, thus his communications with Buenaga are central to the issue. Under either interpretation of the nature of the communication with the intermediary, the facts set forth in the affidavit are insufficient. Unlike in *Hite*, Johnston did not make any comments about how to entice Minor Victim 1. He did not direct Buenaga to communicate with Minor Victim 1 on Johnston's behalf. Unlike in *Montgomery*, Johnston did not seek confirmation of Minor Victim 1's interest in sexual activity. He did not suggest giving the child sleepy medicine or suggest playing with her. He did not ask Buenaga if he had told Minor Victim about him.

Johnston's case is factually similar to *Nitschke*. Like Nitschke, Johnston never sought out access to Minor Victim 1. Johnston's comments that arguable pertain to her were all made in

response to messages by Buenaga. Johnston did not ask Buenaga to pass along any messages to Minor Victim 1. He did not make any promises to her through Buenaga. He did not offer any money or anything of value. He did not invite Minor Victim 1 anywhere. Similar to Nitschke, at best, the facts set forth in the affidavit show Johnston considered accepting an unsolicited offer from Buenaga.

For the same reasons, the good-faith exception does not apply. As was the case in *Church*, here there is clear Fourth Circuit case law specifying that the statute criminalized efforts at achieving a minors mental state – assent. A 6-8 month old baby, unlike a toddler, cannot be persuaded into a mental state of asset. Alternatively, it is clear from the affidavit that Johnston's messages do not demonstrate an effort to persuade, induce, entice, or coerce Buenaga to assure Minor Victim 1's assent, assuming she can assent at all. Executing officers could not reasonably believe that the content of the messages demonstrated that Johnston did anything more than acquiesce to Buenaga's suggestions without ever taking steps that constitute persuasion, inducement, enticement, or coercion.

## IV. CONCLUSION

For the reasons stated herein, the warrant lacked probable cause both in relation to the child pornography related crimes and to the enticement and coercion charge. Because the good-faith exception does not apply, all evidence obtained, directly from and derivative of a search warrant executed on the Samsung Phone in Black and Clear Case must be suppressed.

Respectfully submitted,

*/s/ Stephanie F. Kessler*

STEPHANIE F. KESSLER (0092338)
Kessler Defense LLC
500 East Main St, 1600
Norfolk, VA 23510
(513) 316-5807
stephanie@kesslerdefense.com

*Attorney for Ryan Johnston*